USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/24/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW ORIENTAL ENTERPRISE, PTE, LTD.,

                    Plaintiff,

          -against-

MISSION CRITICAL SOLUTIONS LLC, a/k/a
MCS, MARK-ANTHONY PHILLIPS,
TRANSACTRADE, LLC, TRIGON TRADING
PARTY LTD., and JOHN DOES 2 and 3,

                   Defendants.

1:20-cv-02327 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO
DISMISS, GRANTING LEAVE TO
AMEND, AND GRANTING IN
PART MOTION FOR
SANCTIONS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff New Oriental Enterprise, PTE, Ltd., brings this action against Defendants

Mission Critical Solutions LLC ("MCS"), Mark-Anthony Phillips, Transactrade, LLC, and

Trigon Trading Party Ltd. (collectively "Defendants"), for common law claims arising out of a

transaction for $800,000 in Bitcoin. (Am. Compl. [ECF No. 42]). Defendants move to dismiss

Plaintiff's Amended Complaint. [ECF No. 48]. Defendants have also moved the Court for an

order sanctioning Plaintiff for including false statements in its original opposition papers. [ECF

No. 66].

## BACKGROUND

### I.    Factual Background[1]

Plaintiff is a Malaysian entity with its principal place of business in Singapore, Malaysia.

(Am. Compl. ¶ 1). On or about November 22, 2019, Scott Elsby, an "authorized representative"

---

[1] Unless otherwise noted, the facts are taken from the Amended Complaint, and are accepted as true for the purposes of this motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, this Court need not "accept as true all of the [legal conclusions] contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

of Plaintiff, entered into an oral agreement with Cristel Ferreto, a cryptocurrency broker in Costa Rica, for services to assist Plaintiff in the purchase of Bitcoin.  (Am. Compl. ¶ 8).  After Mr. Elsby expressed interest to Ms. Ferreto in purchasing $800,000 in Bitcoin for Plaintiff, Ms. Ferreto directed Plaintiff to transfer $800,000 to the bank account of MCS.  (Am. Compl. ¶¶ 8–9).

Plaintiff alleges that Ms. Ferreto made several representations to Plaintiff on behalf of Defendants.  She represented that: (1) she was a bona fide intermediary broker who was familiar with Crypto transactions and Defendants; (2) the purchase of the Bitcoin would be handled by Defendants who would maintain custody of the Bitcoin in an e-wallet for Plaintiff; (3) MCS was an established company with which Ms. Ferreto regularly dealt; (4) MCS was solvent and financially responsible and would execute the transaction; and (4) Mr. Phillips, who is alleged to be the "principal" of MCS, was experienced in trading Crypto currencies.  (Am. Compl. ¶ 11). Plaintiff alleges that based on these representations, it transferred $800,000 to MCS.  (Am. Compl. ¶¶ 12–14).

Plaintiff alleges that these representations proved to be false and that MCS was not in the business of trading Crypto Currency but was instead "a shell company."  (Am. Compl. ¶ 15). Plaintiff alleges that no Bitcoin was ever purchased for Plaintiff and that "a bogus invoice" was issued by Mr. Phillips "using MCS as a front, for bogus services of '3 months of software implementation and consulting services.'"  (Am. Compl. ¶ 16).  Plaintiff alleges that the $800,000 remains in the custody of Defendants.  (Am. Compl. ¶ 23).

## II.    Procedural History

On February 18, 2020, Plaintiff commenced this action in the Supreme Court of the State of New York, County of New York under the caption, *New Oriental Enterprise, PTE, LTD, v.*

2

*Mission Critical Solutions LLC, a/k/a MCS, TD Bank, N.A., and John Does 1 to 3*, Index Number 151712/2020 (the "State Court Action"), by the filing of a Summons with Notice and Verified Complaint.  (Notice of Removal [ECF No. 1] ¶ 1; Notice of Removal Exs. 1, 2).[2]  That same day, Plaintiff also moved the State Court by Order to Show Cause for a restraint and preliminary injunction pursuant to Articles 62 and 63 of the CPLR.  (Notice of Removal Exs. 3–8).  The Supreme Court of New York granted Plaintiff a temporary restraint on the bank account of MCS and scheduled oral argument on the motion for injunctive relief.  (Notice of Removal Ex. 9).

Shortly thereafter, then Defendant TD Bank removed the action to federal court, invoking diversity jurisdiction, and filed an opposition to Plaintiff's Motion for a preliminary injunction. (Notice of Removal); [ECF No. 4].  MCS also opposed Plaintiff's motion and cross-moved pursuant to NY CPLR § 6212(e) for damages it alleged it had incurred because of the temporary restraining order issued by the State Court in response to Plaintiff's motion.  [ECF No. 8]. Thereafter, Plaintiff requested that the state court's Order to Show Cause be withdrawn [ECF No. 20] and stipulated to dismiss without prejudice claims against Defendant TD Bank [ECF No. 21].

Defendants moved in this Court to dismiss Plaintiff's Complaint.  [ECF No. 24].  In response, Plaintiff sought leave amend the Complaint to add two new defendants, [ECF No. 30], which the Court granted, [ECF No. 39].  The Court warned Plaintiff that "[b]y reason of MCS's Motion to Dismiss, New Oriental is on notice of the alleged deficiencies in its pleading. New Oriental is warned that the Court will be reluctant to grant further leave to amend if MCS and the new Defendants successfully move to dismiss the Amended Complaint."  [ECF No. 39].

---

[2] TD Bank is no longer a Defendant in this action.  [ECF No. 21].

Plaintiff filed the Amended Complaint adding Mark-Anthony Phillips and Transactrade, LLC and dropping TD Bank. [ECF No. 42].[3] Plaintiff's Amended Complaint alleges six causes of action: (1) fraud and deceit; (2) rescission; (3) conversion; (4) money had and received; (5) unjust enrichment; and (6) specific performance. (*See* Am. Compl.). All the causes of action are premised on Defendant's alleged fraudulent taking of Plaintiff's $800,000. (*See* Am. Compl.).

Defendants now move to dismiss the amended complaint. [ECF No. 48]. In support of their motion, Defendants filed a memorandum of law, (Def. Br. [ECF No. 50]), and the Declaration of Carter A. Reich, counsel for Defendants, with several exhibits, (Reich Decl. [ECF No. 49]). In opposition, Plaintiff filed a memorandum of law, (Pl. Opp'n [ECF No. 62]), and the declaration of Jack S. Dweck, counsel for Plaintiff, with several exhibits, (Dweck Decl. [ECF No. 61]). Defendants filed a reply brief. (Def. Reply [ECF No. 65]).

### III.    Motion For Sanctions

After Defendants filed their Motion to Dismiss the Amended Complaint, Plaintiff initially opposed the motion by filing a memorandum of law and an affidavit dated August 17, 2021. [ECF Nos. 53, 54]. In those filings, Plaintiff's counsel, Jack Dweck, Esq., swore that Mr. Phillips previously had been arrested and had plead guilty in 1994 in the Northern District of New York for embezzling union pension funds. [ECF Nos. 53, 54].

The next day, counsel for Defendant, Carter Reich, Esq., advised Mr. Dweck that the criminal case Plaintiff referenced in its opposition "was filed 3 weeks after my client's 15th birthday so he was most certainly not embezzling funds from the Construction Laborers Union

---

[3] In that Amended Complaint, Plaintiff also added Trigon Trading Party Ltd. ("Trigon") as a defendant. [ECF No. 42]. However, Plaintiff did not have leave to add Trigon as a defendant. In Plaintiff's Motion for leave to amend the Complaint, it only sought to add defendants Mark-Anthony Phillips and Transac-Trade LLC. ([ECF Nos. 30, 31]). Indeed, Plaintiff's proposed Amended Complaint did not include Trigon as a defendant. [ECF No. 31-2]. Nonetheless, the Court will consider Plaintiff's allegations against Defendant Trigon as well.

Pension Fund." (Reich Supp. Decl. [ECF No. 67] ¶ 5, Ex. D). Mr. Reich attached a copy of Mr. Phillip's New York State ID Card, listing his birth year as 1979. (Reich Supp. Decl. Exs. D, G). Mr. Reich requested that Mr. Dweck file an amended affidavit, removing the reference to the arrest. (Reich Supp. Decl. Ex. D). Only five minutes later, Mr. Dweck responded, declining to amend the opposition filings. (Reich Supp. Decl. Ex. D).

Defendants promptly filed a pre-motion letter in anticipation of filing a motion to strike Plaintiff's opposition and for costs and sanctions pursuant to Rule 11. [ECF No. 55]. Plaintiff opposed Defendant's request, stating that the criminal history of Mr. Phillips was relevant to the Motion to Dismiss and that the 1994 arrest and guilty plea evinced Mr. Phillip's propensity for criminal conduct. [ECF No. 56].

The Court ordered Plaintiff to show cause why it was not withdrawing its opposition in light of the information that Defendant Mark-Anthony Phillips is not the same Mark Anthony Phillips who plead guilty to embezzlement in 1994. [ECF No. 57]. Several days later, Plaintiff filed a letter seeking leave to file an amended opposition without any reference to the 1994 arrest and guilty plea. [ECF No. 58]. Subsequently, the Court granted leave to file an amended opposition without the false assertion, granted Defendants leave to move for Rule 11 sanctions, and ordered that Plaintiff's original opposition papers be stricken. [ECF No. 63].

Defendants now have moved for Rule 11 Sanctions. [ECF No. 66]. In support of their motion, Defendants filed a memorandum of law, (Def. Supp. Br. [ECF No. 68]), and the Declaration of Carter A. Reich, counsel for Defendants, with several exhibits, (Reich Supp. Decl.). Plaintiff filed an opposition, (Pl. Supp. Opp'n [ECF No. 69]), and Defendants replied, (Def. Supp. Reply [ECF No. 70]).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

All claims based on allegations of fraud trigger the heightened pleading standard of Rule 9(b).  *See*, *e.g.*, *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (holding that because a plaintiff's state law claims are premised "in large part, on defendants' alleged fraudulent conduct, plaintiffs must comply with Rule 9(b)"); *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 629 (2d Cir. 2020) (holding that where a plaintiff's conversion claim is based on an allegation of fraudulent taking, it is subject to the pleading requirements of Rule 9(b)); *Aurelius Cap. Master, Ltd. v. Republic of Argentina*, No. 19 CIV. 10109 (LAP), 2021 WL 1177465, at *6 (S.D.N.Y. Mar. 29, 2021) ("Courts in the Second Circuit have applied Rule 9(b) to any cause of action that bears a close legal relationship to fraud or mistake, as well as to individual claims that, as pleaded, are predicated on allegations of fraud.").  Rule 9(b) places two burdens on fraud plaintiffs.  First, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the

statements (or omissions) were made, and (4) explain why the statements (or omissions) are

fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168,

187 (2d Cir. 2004) (internal quotation marks omitted).  Second, though mental states may be

pleaded "generally," Plaintiffs must nonetheless allege facts "that give rise to a strong inference

of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006).

Allegations that are merely conclusory or "unsupported by factual allegations" cannot meet this

standard.  *Id.*

## DISCUSSION

I.   **Defendant's Motion To Dismiss Is Granted**

A.  **Plaintiff's Amended Complaint Insufficiently Pleads Common Law Fraud**

Under New York law, fraud requires proof of (1) a material misrepresentation or

omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4)

justifiable reliance by the plaintiff, and (5) damages.  *Eurycleia Partners, LP v. Seward & Kissel,

LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 (N.Y. 2009).  At the pleading

stage, to withstand a Rule 12(b)(6) challenge in federal court, Plaintiff must "assert facts that

plausibly support the inference of fraud."  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 360 (2d

Cir. 2013).  Moreover, Plaintiff must meet the heightened pleading requirements of Rule 9(b).

Plaintiff's Amended Complaint fails to state a claim for common law fraud because it

fails to plead any facts to show that any of the named defendants in this action made fraudulent

statements with an intent to defraud.  Plaintiff's Amended Complaint alleges only that Ms.

Ferreto made representations to Plaintiff.  (Am. Compl. ¶ 11).  Ms. Ferreto is not a defendant in

this action.  There is nothing in the Amended Complaint that alleges that any of the Defendants

ever made any fraudulent statements to the Plaintiff upon which the Plaintiff then relied in

sending $800,000 to MCS.  Indeed, there is nothing in the Amended Complaint that alleges that any of Defendants ever made *any* statements to Plaintiff upon which Plaintiff then relied.

Plaintiff's only allegations connecting Ms. Ferreto to Defendants is the allegation, made upon information and belief, that she was "acting on behalf of the Defendants."  (Am. Compl. ¶¶ 10, 13).  However, the Court is not required to accept such conclusory allegations, particularly where made merely on information and belief.  *See Iqbal*, 556 U.S. at 678; *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991) (holding that allegations fail under Rule 9(b) where made upon "'information and belief' and do not identify with particularity the facts upon which the belief is founded"); *Manda Int'l Corp. v. Yager*, 139 A.D.3d 594, 594, 32 N.Y.S.3d 145 (1st Dep't 2016) (holding that allegations of fraud that lacked sufficient detail and were "asserted upon information and belief" did not meet the heightened pleading standard).

The Amended Complaint fails to plead any facts to support that any of the defendants in this action made fraudulent statements to Plaintiff with an intent to defraud, let alone sufficient to "give rise to a strong inference of fraudulent intent."  *Lerner*, 459 F.3d at 290–91.  Moreover, because all of the causes of action contained in the Amended Complaint are premised on a fraudulent taking, none of Plaintiff's other claims can survive.  *See* Fed. R. Civ. P. 9(b); *O'Brien*, 936 F.2d at 676; *Zamora*, 834 F. App'x at 629.

**B.  Plaintiff's Amended Complaint Insufficiently Pleads A
Rescission Claim And A Claim For Specific Performance**

Even putting aside Plaintiff's insufficient pleadings of fraud, Plaintiff cannot state a claim for either rescission or specific performance.  Rescission and Specific Performance are not causes of action; rather they are remedies for a breach of contract claim.  *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 227 (2d Cir. 2017) (rescission can only be obtained where there is a breach of contract); *Procapui-Productores de Camaroes de Icapui Ltda. v. Leyani*, No.

07-CV-6627 (BSJ), 2010 WL 2720584, at *4 (S.D.N.Y. June 22, 2010) ("Rescission is an equitable remedy, not an independent cause of action."); *CAI Rail, Inc. v. Badger Mining Corp.*, No. 20 CIV. 4644 (JPC), 2021 WL 705880, at *11 (S.D.N.Y. Feb. 22, 2021) ("[I]t is well-settled that specific performance is not a separate cause of action, but rather 'an equitable remedy for a breach of contract.'" (quoting *Cho v. 401-403 57th St. Realty Corp.*, 300 A.D.2d 174, 175, 752 N.Y.S.2d 55, 57 (1st Dep't 2002))).  Plaintiff has not pleaded any facts to support that it had a contract with Defendants.  Plaintiff merely alleges, upon information and belief, that Ms. Ferreto was acting on behalf of the Defendants.  (Am. Compl. ¶¶ 10, 13).  This is clearly insufficient to establish any sort of relationship that would bind Defendants to an alleged contract.  *See Iqbal*, 556 U.S. at 678.  Tellingly, Plaintiff has not asserted any claim for a breach of contract in this suit.  As such, Plaintiff's claims for rescission and specific performance are dismissed for these additional reasons.

## II.   Plaintiff Is Granted Leave To Amend

Plaintiff asks the Court for leave to amend its Amended Complaint a second time should the Court grant Defendants' Motion to Dismiss.  (Pl. Opp'n 16).  Plaintiff also requests that if the Court "entertains any questions about the fraud, since MCS and Phillips have claimed delivery of the coins albeit to the wrong e-wallet . . . then Plaintiff requests leave to amend the Complaint to allege the unilateral mistake by MCS and Phillips and/or negligence in delivery of the coins to the wrong e-wallet."  (Pl. Opp'n 10).

Although leave to amend shall be freely given when justice so requires, Fed. R. Civ. P. 15(a), and "[c]omplaints dismissed under Rule 9(b) are almost always dismissed with leave to amend," *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986), Rule 15(a) is not without limits.  The Court has broad discretion in determining whether to grant leave to amend.  *Gurary v.*

9

*Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  And, leave to amend need not be granted when amendment would be futile.  *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)).

Plaintiff was already granted leave to amend once.  The Court did so *after* Defendants had already filed their Motion to Dismiss the original Complaint.  That motion raised the same arguments that Defendants have again raised now, including that Plaintiff had failed to plead fraud with the specificity required by Rule 9(b).  [ECF No. 26].  When the Court granted Plaintiff leave to amend, it warned that "[b]y reason of MCS's Motion to Dismiss, New Oriental is on notice of the alleged deficiencies in its pleading . . . the Court will be reluctant to grant further leave to amend if MCS and the new Defendants successfully move to dismiss the Amended Complaint."  [ECF No. 39].  Notwithstanding that Plaintiff was on notice of the deficiencies in its initial complaint, Plaintiff's Amended Complaint still fails to state a claim for relief.

Nonetheless, although the Court is loath to do so given the Court's prior warnings, the Court grants Plaintiff leave to amend its complaint.  Accordingly, Plaintiff's Amended Complaint is dismissed without prejudice and with leave to amend.

### III.   Defendants' Motion For Sanctions Is Granted In Part

#### A.  The Conduct Of Plaintiff's Counsel Warrants Rule 11 Sanctions

Defendants have also moved for an order imposing Rule 11 sanctions on Plaintiff and its counsel.  [ECF No. 66].  Rule 11 gives a district court authority to sanction a litigant or its counsel.  Fed. R. Civ. P. 11.  A court may award sanctions where a filing is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; the claims are "[un]warranted by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law or for establishing new law"; or "the factual contentions" lack "evidentiary support."  Fed. R. Civ. P. 11(b).  Normally, liability may be imposed if the lawyer's claim to have evidentiary support is not objectively reasonable.  *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).  However, where the Court imposes sanctions *sua sponte*, the Court should only impose sanctions upon a showing of bad faith. *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013).

Whether to impose a sanction for a Rule 11(b) violation is committed to the sound discretion of the district court.  *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).  If the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.  Fed. R. Civ. P. 11(c).  Because of its potency, a court's power to sanction "must be exercised with restraint and discretion."  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).  A court should sanction only "'bad faith, vexatious[ ], [or] wanton[ ]' acts or actions otherwise undertaken for 'oppressive reasons.'"  *Id.* (quoting *Chambers*, 501 U.S. at 45–46).  The Court must separate frivolous claims from mere zealous advocacy.  Accordingly, courts are required to make two findings before imposing such sanctions: (1) that the challenged claim "was without a colorable basis;" and (2) that the claim was "brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'"  *Id.* (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)).  Both findings must be supported by a "high degree of specificity in the factual findings."  *Enmon*, 675 F.3d at 143 (quoting *Walters Khmer Fin, Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)).

11

A claim is without colorable basis when it "lacks any legal or factual basis." *Walters Kluwer Fin. Servs.*, 564 F.3d at 114.  Bad faith may be inferred only if actions are so baseless as to require the conclusion that they must have been undertaken for some improper purpose such as delay or harassment. *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).  In determining whether such conduct is sanctionable, a "court should primarily focus on the intent of the potentially sanctionable conduct, not on its *effect*." *Int'l Techs. Mktg.*, 991 F.3d at 368 (emphasis in original).

Defendants assert three grounds for seeking Rule 11 sanctions.  They argue that: (1) Plaintiff's Amended Complaint contains factual contentions that lack evidentiary support; (2) Plaintiff failed to post a $40,000 bond that was ordered by the State Court; and (3) Plaintiff failed to promptly withdraw its filings, which falsely stated that Mr. Phillips had been arrested and convicted in 1994 of embezzlement, when notified by Mr. Reich that this arrest and conviction related to the wrong Mr. Phillips. (Def. Supp. Br. 2–3).

First, the Court denies Defendants' Motion to the extent that it seeks Rule 11 sanctions for the filing of Plaintiff's Complaint.  As an initial matter, many of Defendants arguments simply mirror the contentions in their Motion to Dismiss the Amended Complaint.  Moreover, Defendants' contention is that Plaintiff's Complaint contains false statements.  However, in asserting that the allegations in the Complaint are false, Defendants cite to affidavits filed by Defendants in this suit, (Reich Decl. Exs. C, D), and several emails that Defendants' counsel sent to Plaintiff's counsel, (Reich Decl. Exs. G, H).  The Court cannot conclude from these documents that Plaintiff's Complaint is "so completely without merit as to require the conclusion that [it] must have been [filed] for some improper purpose." *Schlaifer Nance*, 194 F.3d at 336 (citation omitted).

The Court also denies Defendants' Motion to the extent that it seeks Rule 11 sanctions for Plaintiff's alleged failure to post a $40,000 bond that was ordered by the State Court. Defendants contend that after Plaintiff was granted a temporary restraining order in state court, which froze Defendants' assets and bank account with TD Bank, the New York Supreme Court required Plaintiff to post a $40,000 bond as a condition of maintaining the action. (Reich Supp. Decl. Ex. A). Defendants assert that after the state court matter was removed, counsel contacted the state court to inquire about the status of the bond and was informed that no bond was ever posted by Plaintiff. (Reich Supp. Decl. Ex. A). Under N.Y. CPLR § 6212(e), Defendants would only be able to recover Plaintiff's bond "if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property." Defendants would not have recovered the bond here anyway because the state court matter was disposed of when Defendants removed this action to federal court, not because Defendants recovered a judgment. (Notice of Removal). To the extent that Defendants think Plaintiff disobeyed a state court order, they should seek sanctions upon that court. To the extent that Defendants claim they were wronged by the temporary restraining order or assert that it was wrongfully obtained, Defendants may seek recourse in state court (or elsewhere) if they so choose. Rule 11 sanctions are not appropriate.

Sanctions are appropriate however for the failure of Plaintiff's counsel to withdraw the opposition filings when it became clear that its potentially irrelevant and inflammatory reference to a 1994 arrest and guilty plea for embezzling funds concerned a different Mark-Anthony Phillips than the defendant. After Plaintiff filed its opposition to Defendant's Motion to Dismiss, Mr. Reich emailed Mr. Dweck and informed him that the criminal conduct referenced "was filed 3 weeks after my client's 15th birthday so he was most certainly not embezzling funds from the

13

Construction Laborers Union Pension Fund." (Reich Supp. Decl. ¶ 5, Ex. D). Mr. Reich attached evidence to substantiate his claim, specifically a copy of Mr. Phillip's New York State ID Card, listing his birth year as 1979. (Reich Supp. Decl. Exs. D, G). Mr. Dweck's response, in which he refused to withdraw the submission, came only five minutes later, (Reich Supp. Decl. Ex. D), clearly indicating that Mr. Dweck performed no investigation to confirm whether his opposition papers contained assertions that were without factual support. Six days later, after Defendants filed their pre-motion letter in anticipation of filing a motion to strike Plaintiff's opposition, Mr. Dweck continued to refuse to withdraw the submission, stating that the criminal history of Mr. Phillips was relevant to the Motion to Dismiss and that the 1994 arrest and guilty plea evinced Mr. Phillip's propensity for criminal conduct. [ECF No. 56]. It was not until the Court ordered Plaintiff to show cause why it was not withdrawing its opposition that Mr. Dweck finally relented. [ECF Nos. 57, 58].

Mr. Dweck claims that his actions were taken in good faith and that he believed at the time that he filed the opposition papers that the 1994 arrest and guilty plea pertained to the Mr. Phillips in this case. (Pl. Supp. Opp'n 9). Putting aside the questionable relevance of the assertion to the Motion to Dismiss, counsel still does not explain why he refused to correct the filing once he was presented with irrefutable proof that this statement was false.

Mr. Dweck also claims that Mr. Reich's initial email informing Mr. Dweck of the error in Plaintiff's filings was too vague to put him on notice that the filing was incorrect. (Pl. Supp. Opp'n 4). However, the email clearly states that the individual who was arrested and pleaded guilty in 1994 to embezzlement was not the defendant. (Reich Supp. Decl. Ex. D).

Mr. Dweck claims that after he received the email from Mr. Reich, he immediately tried to get in touch with him to confirm that the statement in the opposition filing was false, but that

14

he could not reach Mr. Reich because he was on vacation.  (Pl. Supp. Opp'n 4).  However, this claim is belied by Mr. Dweck's own email response to Mr. Reich.  Mr. Dweck actually *did* respond to the email but did not seek clarification or a follow up.  Instead, Mr. Dweck simply refused to withdraw the submission without doing any research to confirm whether his claim was correct in light of the information provided by Mr. Reich or even to ask any questions.  (Reich Supp. Decl. Ex. D).  Moreover, six days later, Mr. Dweck continued to refuse to withdraw the submissions.  [ECF No. 56].

Mr. Dweck also asserts that he withdrew the filings within the 21-day safe harbor period. However, the 21-day safe harbor rule is inapplicable to cases like this one in which the district court issues a *sua sponte* order to show cause that ultimately prompted the withdrawal. *See Muhammad*, 732 F.3d at 108.

Accordingly, the Court will grant Defendants' Motion for an Order pursuant to Rule 11, imposing sanctions on Plaintiff's counsel for his false filing and his subsequent refusal to correct that inaccurate and inflammatory filing.

### B.  Amount Of Sanctions

Under Rule 11

> [a] sanction imposed under this rule must be limited to what suffices
> to deter repetition of the conduct or comparable conduct by others
> similarly situated.   The sanction may include nonmonetary
> directives; an order to pay a penalty into court; or, if imposed on
> motion and warranted for effective deterrence, an order directing
> payment to the movant of part or all of the reasonable attorney's fees
> and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4).  Because sanctions imposed under Rule 11 must be limited to what suffices to deter offending conduct, "the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty."  Fed. R. Civ. P. 11(c) advisory committee's note to 1993 amendments; *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103

(2d Cir. 2015) ("The 1993 revision makes clear that the main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender." (quotation marks omitted)); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (observing that Rule 11 "is not a fee-shifting mechanism" (quotations omitted)). Even if a court finds a violation of Rule 11, sanctions are discretionary and need not be imposed. *Ipon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012).

In fashioning a sanctions order, the Advisory Committee notes suggest the following considerations:

> (1) whether the improper conduct was willful or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in either time or expense; (7) whether the responsible person is trained in law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants.

*Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-CV-2065 (AJN), 2015 WL 13654007, at *33 (S.D.N.Y. Mar. 26, 2015) (Nathan, J.). In determining how to allocate sanctions between the plaintiff and its counsel, "the court should direct sanctions at whoever is responsible for the filing of the frivolous paper." *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F. Supp. 814, 829 (S.D.N.Y. 1992) (citation omitted); Fed. R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation.").

Considering these factors, the Court concludes that a monetary sanction against Mr. Dweck alone in the amount of $2,000 is warranted. The Court finds that this amount is sufficient to deter similar activity by other litigants. The Court considers the blatant willfulness of Mr.

Dweck's conduct in refusing to withdraw the opposition pleadings, which contained factual contentions that had no evidentiary support, until ordered to show cause by the Court why he had not done so. Nonetheless, the Court is not aware of any prior instances of this Plaintiff or Mr. Dweck engaging in sanctionable conduct. Moreover, the conduct here did not result in a significant added expense to the Defendants or to the Court. In response to Mr. Dweck's conduct, Defendants filed a pre-motion letter to the Court and the Court issued an order to show cause. That order caused Mr. Dweck to withdraw the false statement, which remedied the issue.

The Court also imposes this sanction only on Mr. Dweck. Although assessment of fault between attorney and client can be rather difficult, in this case it was Mr. Dweck who was informed about the false statement contained in the opposition filing and it was Mr. Dweck who, without conducting any investigation, disregarded the request of Mr. Reich to withdraw the opposition as filed. This is not a case where a client misleads his attorney. Instead, Mr. Dweck should bear this cost alone.

Therefore, in light of the Mr. Dweck's refusal to withdraw a filing with a prejudicial and factually baseless statement, but also the filings limited effect on this litigation, the Court finds that a monetary sanction in the amount of $2,000 is appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendants Motion to Dismiss is GRANTED and Plaintiff's Amended Complaint is DISMISSED without prejudice and with leave to amend. Plaintiff shall file its Second Amended Complaint on or before April 25, 2022. Plaintiff's second opportunity to amend its complaint comes after Defendants have already filed two motions to dismiss [ECF Nos. 26, 48], and the Court, in this opinion, now has explained thoroughly the deficiencies in Plaintiff's Amended Complaint. The Court has already warned Plaintiff once that the Court

would be reluctant to grant further leave to amend should Defendants successfully move to dismiss Plaintiff's Amended Complaint.  [ECF No. 39].  Plaintiff is now on notice of the deficiencies in its complaint.  Plaintiff is warned that the Court will be loath to grant further leave to amend Plaintiff's Second Amended Complaint should that Second Amended Complaint fail to state a claim upon which relief can be granted.

Defendants' Motion for Sanctions is also GRANTED in part.  The Court hereby imposes a sanction of $2,000 upon attorney Jack Dweck, Esq., payable to the Clerk of the Court within thirty days from the date of this order.

The Clerk of Court is respectfully requested to terminate docket entries 48 and 66.

**SO ORDERED.**

**Date:   March 24, 2022**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**